IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**JEFFERY CHARLES ELMORE,**
**ADC #091418**                                                                                       **PLAINTIFF**

**V.                         CASE NO. 1:16-CV-110-JM-BD**

**MAJORIE HALL-REED and**
**MARTY HEARYMAN**                                                                     **DEFENDANTS**

### RECOMMENDED DISPOSITION

**I.**   **Procedure for Filing Objections**

This Recommended Disposition ("Recommendation") has been sent to Judge James M. Moody Jr. Any party may file written objections to this Recommendation. Objections must be specific and must include the factual or legal basis for your objection. Any objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, parties may waive any right to appeal questions of fact.

**II.**   **Background**

Jeffery Charles Elmore, an Arkansas Department of Correction ("ADC") inmate, filed this lawsuit without the help of a lawyer under 42 U.S.C. § 1983. He alleges that

Defendants Hall[1] and Hearyman were deliberately indifferent to his serious medical needs, and that Defendant Hall retaliated against him. (Docket entry #2)

Defendants have moved for summary judgment on all claims. (#25) Mr. Elmore has responded to the motion (#29), and the case is ripe for decision.

### III. Discussion

A. Standard

Summary judgment is appropriate only when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no real dispute about any fact that is important to the outcome of the case. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). As the moving parties, Defendants Hall and Hearyman bear the burden of producing admissible evidence showing that all material facts are undisputed. Once they offer such evidence, Mr. Elmore must meet evidence with evidence to avoid summary judgment.

B. Deliberate-Indifference Claim

1. Mr. Elmore's Medical Records

On March 28, 2016, Mr. Elmore went to the prison infirmary complaining of an injury to his right hand. (#27-1 at p.1) Nurse Teague (not a party to this lawsuit) noted three superficial scratches on the top of Mr. Elmore's knuckles and a "lemon size hard knot on the top of his hand." (*Id.*) Nurse Teague wrapped Mr. Elmore's right hand with a

---

[1] In their motion for summary judgment, Defendants refer to Defendant Hall-Reed as Defendant Hall. Therefore, the Court will do the same in this Recommendation.

four-inch ace bandage, applied an ice pack, and gave him ibuprofen. (*Id.*) Mr. Elmore was scheduled for an x-ray of his right hand the following Monday. (*Id.*)

An April 4, 2016 x-ray of Mr. Elmore's right hand revealed "a fracture involving base third metacarpal with no displacement," as well as "associated soft tissue swelling." (#27-1 at p.3) The following day, Defendant Hearyman discussed the x-ray results with Mr. Elmore. (*Id.* at p.4) Defendant Hearyman gave Mr. Elmore a "wrist/hand splint to help with emobilization[sic]" and told him that his right hand should heal in four or five weeks. (*Id.*)

On April 19, 2016, Defendant Hearyman examined Mr. Elmore at the Health Services Office. (*Id.* at p.5) Mr. Elmore told Defendant Hearyman that the pain medication he was prescribed (naproxen) was not providing relief. He stated that "he had to set the bone in his hand." (*Id.*) Mr. Elmore's x-ray, however, revealed "no displacement." (*Id.*) At that encounter, Defendant Hearyman told Mr. Elmore that he could engage in normal activities, such as writing, eating, and brushing his teeth, and that the wrist brace was provided as a reminder for him not to use his right hand "outside of normal, non-strenuous gripping activities." (*Id.*) At that visit, Defendant Hearyman also gave Mr. Elmore acetaminophen to be taken four times daily, as needed, and ordered "appropriate size casting material for a short cast." (*Id.*)

On April 21, 2016, Defendant Hearyman saw Mr. Elmore at sick call. (*Id.* at p.6) Defendant Hearyman told Mr. Elmore that the short-cast material had not yet arrived and that he would be rescheduled for a "cast placement" appointment on the following

Tuesday. (*Id.*) On April 26, 2016, Defendant Hearyman applied a fiberglass cast to Mr. Elmore's right wrist. (*Id.* at p.7)

On May 6, 2016, Mr. Elmore went to the Health Services Office complaining that his cast was loose. (*Id.* at p.8) Mr. Elmore told Nurse Murray (not a party to this lawsuit) that he had gotten the cast wet in the shower on two different occasions. (*Id.*) Nurse Murray instructed to Mr. Elmore to keep the cast dry, then placed an ace bandage around the cast to secure it. (*Id.*)

On May 12, 2016, Defendant Hearyman examined Mr. Elmore. (*Id.* at p.9) Mr. Elmore told Defendant Hearyman that he had gotten the cast wet and had deconstructed it. (*Id.*) At that time, Defendant Hearyman removed the remaining parts of the cast because "it was serving no functional purpose" and wrapped Mr. Elmore's right wrist with an ace bandage. (*Id.*) Defendant Hearyman ordered an x-ray of Mr. Elmore's right wrist. (*Id.*)

    2.    Analysis

Deliberate indifference to a prisoner's serious medical needs is prohibited under the Eighth Amendment to the United States Constitution. *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prove deliberate indifference, Mr. Elmore must show that he suffered from an objectively serious medical need and that the defendants knew of the need, yet deliberately disregarded it. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). In this context, a "serious medical need" is a condition or illness that has been diagnosed by a doctor as requiring treatment, or a

need so apparent that a lay person would easily recognize the need for a doctor's attention. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997).

Defendants are liable, however, only if they "actually knew of but deliberately disregarded" the inmate's serious medical need. *Id.* This showing requires a mental state "akin to criminal recklessness." *Id.* (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)). A prisoner such as Mr. Elmore must show "more than negligence, more even than gross negligence." *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)). Stated another way, to prevail on this claim, Mr. Elmore must show that the Defendants' actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany v. Carnahan*, 132 F.3d 1234, 1240–41 (8th Cir. 1997).

Clearly, Mr. Elmore disagreed with the Defendants' assessment of his medical needs, including Defendant Hearyman's initial decision not to place the wrist in a cast. Disagreement with treatment decisions, however, is not conduct that rises to the level of a constitutional violation. *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010)(plaintiff must show more than even gross negligence, and mere disagreement with treatment decisions does not rise to level of constitutional violation).

In support of their motion for summary judgment, the Defendants attach Defendant Hearyman's sworn statement. (#27-2) Defendant Hearyman testified that he did not place Mr. Elmore in a cast after reviewing the initial x-ray report because the injury was stable and he believed that the soft support was sufficient. (#27-2 at p.2) Defendant Hearyman further testified that, based on Mr. Elmore's consistent complaints,

5

he ultimately provided Mr. Elmore a short cast even though he did not think the cast was medically necessary. (*Id.*)

Here, the undisputed evidence shows that Defendant Hearyman repeatedly examined Mr. Elmore and that the medical staff promptly addressed Mr. Elmore's medical needs. For that reason, the Court concludes that the Defendants' conduct was reasonable and far cry from "intentional maltreatment," by any measure. Defendants are entitled to judgment as a matter of law on this claim.

C.   Retaliation Claim

Mr. Elmore also claims that Defendant Hall took away his ace bandage in retaliation for filing grievances against medical personnel.[2] To prove a retaliation claim, Mr. Elmore must present evidence that he engaged in constitutionally protected activity; that Defendant Hall took adverse action against him that would chill a person of ordinary firmness from engaging in that activity; and that retaliation was the actual motivating factor for the adverse action. *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007); *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). Retaliation must have been the "actual motivating factor," meaning the adverse action would not have occurred "but for a retaliatory motive." *Lewis,* 486 F.3d at 1029; *Haynes v. Stephenson*, 588 F.3d 1152, 1156 (8th Cir. 2009). In other words, the prisoner cannot prevail if the adverse action was taken for a legitimate reason, even if there was also an improper retaliatory motive. *Id.;*

---

[2] In his response to the Defendants' motion, Mr. Elmore states that, in 2015, Defendant Hall retaliated against him by refusing to provide him cold medicine. (#29 at p.3) That claim is not related to the issues raised in this lawsuit and will not be addressed by the Court in this Recommendation.

*Webb v. Hedrick*, Case No. 09-2896, 2010 WL 4366438, *1 (8th Cir. Nov. 5, 2010) (unpublished opinion) (explaining that a prisoner cannot prevail "if retaliation was one factor" in the defendants' decision); *Ponchik v. Bogan*, 929 F.3d 419, 420 (8th Cir. 1991) (rejecting a retaliation claim even when retaliation was only one of the factors leading to the inmate's transfer).

In her declaration in support of the motion, Defendant Hall testified that, on March 30, 2016, isolation security staff contacted the infirmary to advise that Mr. Elmore was not permitted to have an ace bandage wrap in his cell due to concerns over his cellmate's safety. (#27-3 at p.1) At the request of security, Defendant Hall went to isolation and retrieved the ace bandage. (*Id.*) In his deposition, Mr. Elmore conceded that, after Defendant Hall took the ace bandage, he brought him a "stretchy deal" later in the day, but he was unable to fit his hand into the new device. (#27-5 at p.2) The following day, Defendant Hall brought him a wrist brace. (*Id.*)

Mr. Elmore has not come forward with any evidence contradicting Defendant Hall's testimony. Likewise, he has not produced any evidence that retaliation was even one factor in Defendant Hall's decision to retrieve the ace bandage. Because there is no evidence that any improper motive triggered Defendant Hall's conduct, Mr. Elmore's retaliation claim fails as a matter of law.

## IV. <u>Conclusion</u>

The Court recommends that the Defendants' motion for summary judgment (#25) be GRANTED. Mr. Elmore's claims should be DISMISSED, with prejudice. His motion

for an evidentiary hearing (#29) should be DENIED, as moot.

DATED this 18th day of July, 2017.

_____
UNITED STATES MAGISTRATE JUDGE